There we go. Can you hear me now? Yes, I can. Good morning. How do you say your last name, please? Luis. Okay, okay, very good. Please proceed. Yes, I've basically summarized everything in my appellate papers, but I will summarize this for the court, what our position is. And we have here a court that tell that this man, Remigio Escamilla, was tortured in Mexico, and that there is a likelihood, more than not, that he will be tortured if he returns to Mexico. And this man, Remigio, it's of Indian descent, from a Yaqui tribe, who displays being Indian very, very profusely. He shows tattoos, he's dark, he's got long black hair. Hey, counsel. Counsel, can I just ask you a question to focus on one of my concerns in this case? I think there's really, it seems like there's no dispute. The BIA agreed that he had faced past torture. The BIA did it, the IJ and the BIA did a different analysis on whether he would face, likely face torture in the future. But the relocation issue is what I'm interested in, because his family was able to relocate, and it seems like what the IJ, the basis for the IJ's decision was, well, he can't relocate to a Native American area where his family's safe, because he wants to run a government-run business. Can you tell me, I mean, first of all, what was his responsibility to show the possibility of relocation? And to what extent does his ability to have the employment that he wants play into that analysis? Okay. With respect to relocation, he did attempt to relocate to several places in Mexico, and ended up relocating to Tijuana, where he had, again, several problems. With respect to... But none of those problems in Tijuana rose to the level of torture, did it? He was beaten up. I thought the IJ specifically, where did the 2017 incident occur? That happened in Queretaro, I think. Yeah, and I thought the IJ specifically said that was the only basis for his past torture, so I'm not sure that helps your client. Yeah, he was harassed in Tijuana, based, again, on his appearance. But going back to where the wife and the kids moved to, it's an area where he testified that he couldn't perform his learned profession, which was tattooing. He also... That seems like that's accurate, and if we're looking at a clearly erroneous standard, I think the IJ probably is correct. My question is, as a legal matter, how relevant is that to the possibility of relocate? Do you have to show that you can, as part of the relocation analysis, is there a requirement that that include finding the job that you're trained for? I think if he's unable to provide for his family because he can't perform his work, obviously I think that impacts the relocation issue. Is there a case that says that? The IJ didn't cite anything. I just haven't seen a case like this. No, I couldn't find a case on it, but that would be my argument, that that's what would happen. And also, there's a possibility that he will be tortured there. Just because the wife and the kids moved there and they have no problem, it's a different issue. He speaks with an accent, even though he was born in Mexico, he was raised in the United States, so that attracts attention. He also, obviously a woman with long hair doesn't attract attention, but a man with long black hair to his waist attracts attention. I thought one reason why this area was different, and that's another, I mean, I guess this is another question, is the IJ relied on country conditions report that said that, you know, abuse is rampant, corruption is rampant in Mexico, but there was something different about politician Titlan, I don't know how you say that, the city. Oh, the town or city. Yeah, because that was, as I understand it, that was like 60% Native American, so it seems like that might have been a viable, his family had certainly relocated without a problem. It sounds like that would be a viable place for him to relocate without a problem. And so the IJ only said, the IJ's only response to that is, well, he just can't practice his trade. And that's the question I'm left lingering with is, is that a proper basis to say that you can't relocate? And do we entitle that to a clearly erroneous factual finding? Because I don't think anyone would disagree that it's probably likely that, you know, it sounds like it's a poor community, he probably isn't going to be able to have the same kind of practice that he wants to have. So my question is, as a legal matter, is that relevant? And it sounds like you don't have anything particularly strong to point me to there. No, I don't have any case law that points to that. But again, going to your point of the country conditions, the country conditions indicate that there is rampant abuse of indigenous people in Mexico. It doesn't say any particular area. So it's in Mexico in general. So I think that's why the IJ decided on that and referenced the country conditions as a reason. Other questions? Doesn't look like the panel has any additional questions. Do you want to save the balance of your time, counsel? Yes, yes, I am. Very well. All right, let's hear from the government. Good morning, Your Honor. May it please the Court. Michael Heiss on behalf of the Respondent, the Attorney General of the United States. Your Honor has hit the nail on the head. This case is about whether or not Petitioner can live safely somewhere, anywhere in Mexico. And the clear error by the immigration judge was with respect to considering whether or not he can operate his business. I agree that the other factual findings, the BIA incorrectly did a de novo review. And even though they said they were doing a clear error review, they really weren't. They were reevaluating the evidence as to the other factors. The Court's typical concern with the Board's clear error review of immigration judges' findings is about the Board engaging in fact-finding. And the Board here did not find any new facts. No, that's not – well, I don't – let's be careful. I think the Board did clearly find some new facts here. And I think some of what it did is very troubling because, I mean – but on the relocation, that's the one that I'm stuck with. Because if you can relocate, then it doesn't matter if you were likely – if you stayed in your same place, the IJ found that he was likely to be – face future torture. The BIA came to a different conclusion. It seems like that was clear error. That was based – I mean, you don't have to agree with me, but I think that was based on some clearly erroneous – or, excuse me, that was not applying correctly the clearly erroneous standard on some of those. But as to the relocation, what I'm trying to figure out is, does that save the government's – does that save the BIA here? Because that's a purely legal question that the BIA could have decided differently. The government would hesitate to call that a purely legal question. It might actually inert the government's benefit to call it one. But the clear error here was the process of the predictive fact-finding. So the predictive fact-finding is something reviewed for clear error. But what was the illogical – tell me what was illogical about the IJs. It was precisely in line with what your Honor is asking about, was it relevant to consider his – What's the government's case to say it doesn't matter? If you can relocate into an area where you're going to live in poverty, you have to give up your profession that you've established that is very – you might not be able to take care of your family, but you're not going to be tortured, that's enough. What's the case that says that? It's actually the regulation. The torture regulation is 8 CFR 1208.16 C3II. Do you want to back up a minute and say that again, please? Sure thing. 8 CFR what? I already have it written down in front of me, so I'm at fair advantage. 8 CFR 1208.16 C3II. Okay. And that's within the withholding of removal and convention against torture regulation. And it says – what is that? I don't have it in front of me, so. Sure. It says nothing about the reasonableness of relocation. If you look at the – It just says as long as you can relocate. Right. If this were an asylum case, if this were a withholding of removal case, we might have a different result here because the inability to – economic deprivation is a valid factor to consider for asylum and withholding. But torture is special. Torture is the utmost extreme situation. And the question is can you survive? Can you live in Mexico? It doesn't say can you live safely. Can you live – well, safely, yes, but can you live happily? And so what's your basis for the idea that he can live safely and happily there? I mean, I guess it doesn't matter what your basis is. The question is what's the BIA's? And I guess the BIA said, well, his family's lived there. Now, but they didn't face past torture. So what about this idea that it's different for the males than the female and the kids? Well, it's certainly relevant that they – that he suffered past torture, but only, again, as Your Honor mentioned as well, it was only in Querétaro. But what's also a significant factor is his family's ability to live there safely. And not just his family – well, actually, it's his extended family. His wife's mother, his mother-in-law, has lived in Polititlan for her entire life apparently. Father lived there as well. They're both native Yaqui Indians. So the fact that they were able to live safely that entire time is certainly an appropriate factor. And the board found that the immigration judge erred with respect to his family being similarly situated to him. Let me – this is slightly different than what my colleague talked about. But what troubles me about this case is the fact finder, the trial judge, if you will, the IJ, went through all of this and concluded that this man was entitled to relief. Then the BIA comes along and, from my perspective, found a whole bunch of new facts, says no, no. But the standard under the case law is that the IJ is going to be upheld unless the BIA finds – and I'm quoting the words – finds that the BIA's logic, if you will, is illogical, implausible, or not supported by the record. What is the best argument the government has that the BIA made such a finding? If they didn't say so explicitly, are they required to say the IJ blew it because what he said was illogical, implausible, or not supported by the record? Is there anything like that? Well, I think the best case to support that, despite the board not explicitly stating that phrase, would be Meng Dai, where Supreme Court advised that the reviewing court must uphold – less than ideal clarity if the agency's path may be reasonably discerned. I'm not hearing what you're saying very well. You're kind of mumbling. I'm speaking too quickly because I'm quoting and looking down. I apologize. That's okay. You can look up if you want. Sure. Well, I'm trying to quote the Supreme Court. I want to get it right. Dives in. We mumble when we quote the Supreme Court. That's okay. The question is, is there enough here for the court to understand how the board reached its decision? And, yes, there is. I believe it's the last paragraph of the board's decisions on my computer over there. But the final paragraph, I believe, or last two paragraphs, talk about how, while the immigration judge made certain factual findings, those were incorrect in terms of how they were reached. And that gets back to the consideration of his inability to carry out his tattoo business. Again, this is based on record evidence. The board's findings with respect to the family being similarly situated is based on petitioner's own statements about how his wife looks like him, his children look like him, and how his mother-in-law and father lived in this area without issue for decades, and how his family has continued to live there. Those are all facts that he's not disputing. So a clear error is with respect to how the immigration judge considered the totality of the facts. Weren't there a lot of differences between him and his family? The immigration judge really talked about him in particular and talked about how he was different from his wife in terms of the business, wanting to continue with the tattoo shop, not refusing to be extorted. There were a lot of things different. And then the BIA comes back and then they say, well, there really isn't any difference between his situation and his wife's situation. It seemed like the BIA totally ignored a lot of what the immigration judge found. This is a question, I think, of degree. Similarly situated does not mean identical. It just means similar. Do they look similar? And his concern about being targeted was setting aside the tattoo business issue was how he looked, and he looks like them. So I think it's the footnote three on administrative record page four is that Petitioner and his wife and children look similar. And that's enough. And the consideration of the tattoo business is the error. That is not an appropriate factor to determine whether or not he can survive in Mexico. Well, is that the standard, whether he can survive? Again. Whether it's survive without torture. Yes. Well, yes. Torture can include death. It seems like the question is can you move there and face a less than 50 percent chance that you're going to be tortured? Right. And, again, it's his family having lived there safely and being similarly situated to him. But what about the country? I mean, again, we're reviewing for this is a different standard than we usually face. We're asking whether the BIA correctly found that I.J.'s findings were clearly erroneous. So setting aside the line of work, which is an interesting one, and the BIA cited that Maldonado case. But the I.J. also said this is because the reason he couldn't relocate safely was because of the country conditions evidence indicating widespread corruption in Mexico as well as violence against Native American people. Now, I can understand an argument that, hey, this is a Native American community. Maybe you're safer. But is it clearly erroneous to rely on country generalized country conditions reports? Can you just distinguish them and say, well, that's clearly erroneous to rely on that because this is such a unique situation? I hate to keep coming back to the same point, but this is the difference between Convention Against Torture Protection and asylum and withholding. Torture requires far more than abuse. You think it's clearly erroneous to tie corruption in Mexico to torture? Right. It means he might be extorted. He might not be given all the benefits that others are given, but it doesn't show that he's going to be tortured. The government's not disputing that Native Americans in Mexico. But he does say as well as violence against Native American people. Yes. But, again, violence might not get to this level of torture because torture is so extreme. And that's really the point here. The government's not disputing that his situation in Mexico is less than ideal. The conditions confirm that. And that's not what the board was saying here. But is he likely to be tortured, and especially if he's able to live safely where his family has done so? Other questions from my colleague? All right. Thank you for your argument. Thank you, Your Honor. Let's give counsel for the petitioner a chance to rebut. You have a little less than three minutes. Yes, thank you. And I think what you have to consider, too, is it's not – it has to be exact that he will be tortured. It's more likely than not that he will be tortured. So when you take that into consideration and you take into consideration the country conditions, the country conditions, again, and I repeat myself, is that there is torture widespread throughout Mexico. Well, hold on. We're getting some blowback, it sounds like, on your – but it doesn't – the country conditions report, to be clear, doesn't say it's widespread torture. It says there's widespread violence. And even the IJ agreed that much of the violence that was directed towards your client was not torture. Only one of the incidences rose to the level of torture. So I get your point that you can – the question I think we have to struggle with is, is that clearly erroneous to rely on that? And, I mean, can you point me to anything that says torture itself is widespread as opposed to just generalized violence? No, I can't. But torture doesn't have to be physical. I think you can be mentally torture. And somebody like him that in the past has been harassed many, many, many times, I think is up to 15 times. That could amount to torture. And what case would you cite to verify that? As was pointed out by the government, torture is a unique thing. There are lots of terrible things that happen, lots of random criminal acts and so on that we've never found to be torture. And the fact that this man was treated disrespectfully, beaten, things like that, I don't think rises to the level of torture. So can you help us on that? The IJ found one instance of torture. Are you saying the IJ should have found more, or are you saying you stand by what the IJ said? No, I think the IJ should have found more, and not only physical torture, but I think there was some mental torture, the fact that he was harassed and questioned and detained for no apparent reason. And I would return to my question. What case would you cite that confirms the legal validity of what you just said, that the harassment you talked about constitutes torture under American law? Yes, I don't have any cases, Your Honor. I'm afraid there are not any. But in any event, thank you very much for your argument. Your time is up. Let me ask my colleagues whether either has additional questions. I think not. So we thank both counsel for your argument. The case just argued is submitted, and the Court stands adjourned for the day. All rise. This Court for this session stands adjourned.
judges: SMITH, NELSON, UNKNOWN